UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CV-23183-JLK

IDA BREWTON,

    Plaintiff,
vs.

MIAMI-DADE COUNTY,

    Defendant.
_____/

**AMENDED COMPLAINT FOR PERMANENT INJUNCTIVE RELIEF AND DAMAGES AND DEMAND FOR JURY TRIAL**

Plaintiff IDA BREWTON, by and through undersigned counsel, sues Defendant MIAMI-DADE COUNTY, and as grounds therefor, alleges:

**JURISDICTION AND VENUE**

1. Plaintiff seeks relief under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, *et seq.,* and the Florida Civil Rights Act, ("FCRA"), Fla. Stat. §760.01, et seq., for unlawful employment discrimination based on disability. Plaintiff filed this action in the Circuit Court for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, and Defendant removed this action to this Court pursuant to 28 U.S.C. §§1331, 1367, 1441 and 1446, due to this action raising a Federal question and due to this Court having supplemental jurisdiction over the accompanying State law claim.

2. The events giving rise to this action all occurred in MIAMI-DADE County, Florida.

## PARTIES

3. Plaintiff IDA BREWTON (hereinafter "Brewton") is currently employed, and all material times has been employed, by Defendant Miami-Dade Corrections and Rehabilitation Department (hereinafter "MDCR") as a correctional officer with the current rank of Sergeant.

4. Defendant MIAMI-DADE COUNTY operates the MDCR, which processes and houses jail inmates charged with crimes in the State Circuit and County Courts serving Miami-Dade County.  In this Complaint, wherever MDCR is referenced, the named Defendant MIAMI-DADE COUNTY is incorporated into all such references, as MIAMI-DADE COUNTY, the entity legally responsible for MDCR's actions, is the *sui juris* party that is being sued.

## PERFORMANCE OF CONDITIONS PRECEDENT/ EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.   Plaintiff performed all conditions precedent and exhausted administrative remedies prior to bringing this action.  Plaintiff timely dual-filed her discrimination claim in the United States Equal Opportunity Commission and the Florida Commission on Human Relations.  (Exhibit "A").  A U.S. Department of Justice Right-to-Sue Letter was mailed to Plaintiff via U.S. Certified Mail on June 25, 2018, and she received said letter on or about June 29, 2018. (Composite Exhibit "B").  Plaintiff initiated this action within ninety (90) days of receipt of said Right-to-Sue letter.

## GENERAL ALLEGATIONS

6.   Brewton has been employed by the Miami-Dade County Corrections and

Rehabilitation Department (hereinafter "MDCR"), as a Correctional Officer since January 2,1995. She has thus been continuously employed by MDCR for approximately 23 and three-quarter years.

7. For approximately the last 13 years, Brewton has been a Correctional Supervisor, with the current rank of Sergeant for approximately the last 8 years. She is currently working at the Trend Analysis and Action Planning ("TAAP") Unit.

8. Miami-Dade County, which operates MDCR, is an employer within the meaning of the ADA.

9. Brewton is a qualified individual within the meaning of the ADA.

10. Brewton's job performance at MDCR has been consistently excellent.

11. MDCR has several employment locations, including correctional facilities housing inmates and office locations without inmates. Brewton, over her career at MDCR, has worked at various MDCR locations.

12. Brewton was promoted to Sergeant in 2010, and upon being promoted, was first assigned to the Pretrial Detention Center (hereinafter "PTDC") (also known as the Dade County Jail).

13. The PTDC, located behind the Richard E. Gerstein Justice Building, was opened in the year 1961 and over the years developed severe structural mold and mildew conditions (hereinafter referred to as "mold").

14. While working at the PTDC, she experienced an unusually high level of various physical health problems substantially limiting her ability to work, but at the time, did not know why. She requested a transfer to another MDCR facility, and the transfer was granted. She did not experience those health problems while working at the other facility.

15. Brewton thereafter was permanently assigned to various MDCR facilities, not including the PTDC. However, while working at those various facilities, MDCR would require her (and other employees) to rotate out to the PTDC. "Rotating out" is a practice of temporarily placing an employee in another facility to cover for an employee missing duty at that other facility. Brewton would be rotated out to the PTDC approximately once a week, on average.

16. Whenever MDCR would rotate Brewton out to the PTDC, she experienced severe breathing problems and other physical problems, including, but not limited to wheezing, swelling of her throat, headache, fever, sneezing, runny nose, coughing, watery eyes, redness of the eyes, and itchy eyes. She became so ill while working inside the PTDC that she had to take sick leave time for up to a few days or a week to recover.

17. From events arising and described in the allegations below, Brewton later learned later that said breathing and other health problems were the direct result of the PTDC's mold conditions.

18. On June 22, 2012, Brewton's aforesaid breathing and other physical problems from being inside the PTDC (on rotation) became so acute that she had to seek treatment at an urgent care center. The urgent care center physician recommended she be tested for allergies.

19. On July 31, 2012, Brewton's primary physician, Lesley Glover, M.D., diagnosed her with chronic allergic rhinitis and allergic asthma (also called allergy-induced asthma) exacerbated by mold, which causes the severe symptoms described in Paragraph 16 hereinabove, as well as sinusitis, pharyngitis, and otitis media/externa. Dr. Glover

prescribed Brewton an Epipen and an inhaler. Dr. Glover advised MDCR of said diagnosis and ordered that Brewton work in a mold-free location, with that order to be strictly observed.

20. Brewton's aforesaid diagnosed conditions collectively constitute an "impairment" under the definitions of a disability set forth in the ADA, 42 U.S.C. §12101, *et seq.*

21. Brewton's allergic asthma and allergic rhinitis substantially limit major life activities, including breathing and being able to adequately function in any type of work.

22. Brewton has a record of suffering from the mold-induced allergic asthma and allergic rhinitis that at all material times was known to MDCR.

23. Brewton's asthma condition did not affect her ability to work at MDCR locations <u>other than</u> the PTDC (except for the leave time she had to take for recovery following any shift at the PTDC).

24. Brewton's allergy conditions, with accompanying asthma and the other conditions described hereinabove, based on her specific facts, constitute a disability under the Americans with Disabilities Act that substantially limits Brewton's major life activity of breathing and being able to function in any work capacity.

25. Due to her aforesaid doctor's diagnosis and orders, on August 23, 2012, MDCR placed Brewton on "restricted duty" for a period of three months, which excluded working at or rotating out to the PTDC.

26. Brewton has no allergic reaction when working at the other MDCR facilities, where she is able to perform her essential job duties and functions. She has had no problem rotating out to the various MDCR facilities, as long as she can stay away from the

mold-ridden PTDC.

27. In November 2012, Brewton requested an extension of the aforesaid restricted duty, which was granted, but not to exceed an additional three months.

28. Brewton then retained Attorney Nancy Berger, who, on November 8, 2012, demanded MDCR to provide a reasonable accommodation for Brewton's disability under the ADA, including that MDCR permanently refrain from assigning or rotating Brewton to the PTDC.

29. On December 6, 2012, Brewton received noticed from MDCR Legal Advisor Tyrone Williams stating that MDCR would continue to temporarily grant restricted duty status (absent an emergency), and stated that someone from Personnel would contact her to continue the interactive process for discussing her request for accommodation.

30. Brewton's supervisor, Captain Cassandra Jones, advised her to complete an Employee Relations Reasonable Accommodation Request on a Departmental standard form, on which Brewton requested not to be rotated out to the PTDC.  Captain Jones approved said request on February 14, 2013.

31.  On April 1, 2013, Josie Bisbal (an MDCR supervisory official) conveyed to Brewton that Commander John Prat, Chief Walter Schuh, and Assistant Director Marydell Guevara decided that if Brewton's doctor would not take her off restricted duty status, she would be sent home and would have to use her own leave time indefinitely.

32. Dr. Glover would not rescind her order to keep Brewton away from the mold conditions, as Brewton's disabling condition resulting from exposure to mold had not changed.

33. In disregard of said medical order and Brewton's diagnosed disability, MDCR,

on April 11, 2013, removed Brewton from restricted duty status, placing her back on "full duty" (regular status). MDCR therefore rescinded the reasonable accommodation it had previously granted to Brewton due to her diagnosed disability.

34. Brewton then sent several emails to the MDCR Legal Advisor Tyrone Williams and Chief Walter Schuh asking them to look into the aforesaid matter. Though Brewton received e-receipts for said emails, neither Williams nor Schuh responded to said emails. MDCR thus refused to provide the reasonable accommodation that it previously had, or, for that matter, to provide any reasonable accommodation. Also at that point, MDCR refused to engage in the interactive process required by the ADA to assess whether an employee's disability can be reasonably accommodated.

35. MDCR failed to give Brewton any reason for its refusal to continue the reasonable accommodation that it had previously granted her.

36. Said accommodation that Brewton had requested, and that MDCR had previously granted, did not create any hardship on MDCR.

37. When Brewton receives an assignment to rotate out to the PTDC, she is forced to use up her annual leave time and other leave time, in order to avoid becoming extremely ill (and therefore becoming unable to perform her duties) at the mold-ridden PTDC.

38. MDCR has an official policy on unused employee leave time that permits employees to cash in their accumulated unused leave time after 25 years of continuous service. (In other words, an employee reaching the 25-year mark will receive a substantial payment for his/her unused leave time.)

39. Due to MDCR's refusal to accommodate Brewton's disability, as described hereinabove, Brewton is using up a substantial amount of leave time that she otherwise

would not use and would instead be able to cash in when she reaches the 25-year mark with said employer, which is in the near future (approximately a year and a quarter from the date of filing the initial Circuit Court complaint in this action). Therefore, said refusal to provide a reasonable accommodation to Brewton will proximately cause Brewton to sustain said economic losses (unless MDCR is enjoined from, or refrains from, refusing to allow Brewton to cash in leave time she was forced to use solely due to being ordered to rotate out to the PTDC).

40. Due to MDCR's refusal to accommodate Brewton's disability, as described hereinabove, Brewton is at substantial risk of using up her allowable amount of leave time, thereby putting her at risk of being forced to work at the mold-ridden PTDC, where she is certain to become severely ill with breathing difficulties (and thus not able to perform her job duties and functions), or instead being disciplined, up to and including termination, for refusing to work at the PTDC.

41. Brewton, since the year 2012, has been eligible to seek a promotion from Sergeant to Lieutenant, which would result in a higher salary.  Based on her superior performance in her prior promotion exams leading up to her current rank, she would be extremely likely to pass a promotion exam for the rank of Lieutenant and be promoted. However, she has refrained from seeking a promotion to the rank of Lieutenant due to the fact that MDCR assigns each newly-promoted employee to work at the PTDC (with rare exception), as that is generally considered to be the least desirable MDCR location to work at, and employees attaining enough seniority (at their rank) to transfer out from the PTDC usually do so as soon as they  can.

42. The sole reason that Brewton has refrained from seeking a promotion is

MDCR's refusal to provide a reasonable accommodation for her aforementioned disability (described in Paragraphs 31-35 hereinabove), as, upon seeking and being approved for promotion, there would be extremely little chance that MDCR would assign her to any facility other than a facility where she would not be able to function due to her chronic allergic rhinitis and allergic asthma. Therefore, the aforesaid refusal to provide a reasonable accommodation proximately caused Brewton to suffer emotional distress, not only related to the refusal itself (and its immediate adverse effects), but also related to her frustrated plan to seek higher rank with its higher salary and prestige, and it also caused her to lose the opportunity to earn the amount that would be equal to the difference in salaries between to the ranks of Sergeant and Lieutenant.

43. Brewton has on multiple occasions asserted her federally and state protected rights in conversations with her superiors, her employer's legal advisors, and other staff, yet she has not been appropriately accommodated (after the previously-granted accommodation was rescinded).

44. At no time has the defendant shown that the requested accommodation would create an undue hardship on it.

45. On May 22, 2013, Brewton filed a complaint with the Equal Employment Opportunity Commission ("EEOC") for disability discrimination in violation of the ADA and Florida law.

46. In February 2018, EEOC issued a decision that MDCR's refusal to continue its accommodation of Brewton is in violation of the ADA.

47. EEOC attempted to get the parties to conciliate, but MDCR refused to

participate in a conciliation conference.

48. EEOC referred Brewton's claim to the U.S, Department of Justice, Civil Rights Division, which then issued its right-to-sue letter to Brewton on June 25, 2018. Brewton received said right-to-sue letter on or about June 29, 2018.

49. Brewton has had to retain counsel and owes a reasonable attorney fee to vindicate her rights in these matters.

### COUNT I - AMERICANS WITH DISABILITIES ACT, 42 U.S.C. §12101 et seq.

50. Plaintiff realleges Paragraphs 1 through 49 as if fully set forth herein.

51. Plaintiff made a reasonable request to be accommodated for her severe asthma and other allergic reactions caused by working at the mold-ridden PTDC.

52. Plaintiff's condition of having asthma and other severe allergic reactions is within the meaning of the ADA as being disabled. Plaintiff is a qualified individual with a disability within the meaning of the ADA and therefore protected by said Act.

53. Defendant failed to accommodate her by rescinding her restricted duty status, so that she could and would be ordered to "rotate out" to the PTDC.

54. The foregoing actions of Defendant constitute violations of the ADA based upon its failure to provide a reasonable accommodation to the plaintiff, and based upon its failure to engage in the interactive process required by the ADA to assess whether Brewton's disability can be reasonably accommodated.

55. The failure of Defendant to comply with the ADA requirements of engaging in the interactive process and reasonably accommodating the plaintiff has injured the plaintiff.

56. The plaintiff has suffered the damages described hereinabove, as well as emotional distress, as a result of the conduct of the defendant, for which Plaintiff is entitled

to legal and injunctive relief.

57. Plaintiff has retained undersigned counsel to represent then in this action and have incurred attorney's fees. She is entitled to an award of attorney's fees pursuant to 42 U.S.C. §12205.

***WHEREFORE,*** Plaintiff demands:

A) That this Court enter an injunction restraining continued violation of the ADA, and specifically enjoining Defendant from having Plaintiff work at the PTDC;

B) Compensation for the economic losses suffered by Plaintiff as a result of Defendant's violations;

C) Any other compensatory damages, including for emotional distress, allowable at law;

D) Prejudgment interest;

E) An award of reasonable attorney's fees and costs; and

F) Such other relief deemed fair and just.

## **COUNT II - FLORIDA CIVIL RIGHTS ACT OF 1992, CHAPTER 760**

58. Plaintiff realleges Paragraphs 1 through 49 as if fully set forth herein.

59. Plaintiff made a reasonable request to be accommodated for her severe asthma and other allergic reactions caused by working at the mold-ridden PTDC.

60. Plaintiff's condition of having asthma and other severe allergic reactions is within the meaning of the ADA as being disabled. Plaintiff is a qualified individual with a disability within the meaning of the ADA and therefore protected by said Act and the Florida Civil Rights Act ("FCRA").

61. Defendant failed to accommodate her by rescinding her restricted duty status, so that she could and would be ordered to "rotate out" to the PTDC.

62. The foregoing actions of Defendant constitute violations of the ADA and FCRA based upon its failure to provide a reasonable accommodation to the plaintiff, and based upon its failure to engage in the interactive process required by the ADA to assess whether Brewton's disability can be reasonably accommodated.

63. The failure of Defendant to comply with the legal requirements of engaging in the interactive process and reasonably accommodating the plaintiff has injured the plaintiff.

64. The plaintiff has suffered the damages described hereinabove, as well as emotional distress, as a result of the conduct of the defendant, for which Plaintiff is entitled to legal and injunctive relief.

65. Plaintiff has retained undersigned counsel to represent then in this action and have incurred attorney's fees.  She is entitled to an award of attorney's fees pursuant to §760.11(5), Florida Statutes.

**WHEREFORE,** Plaintiff demands:

A) That this Court enter an injunction restraining continued violation of the ADA and FCRA, and specifically enjoining Defendant from having Plaintiff work at the PTDC;

B) Compensation for the economic losses suffered by Plaintiff as a result of Defendant's violations;

C)  Any other compensatory damages, including for emotional distress, allowable at law;

D)  An award of reasonable attorney's fees and costs; and

E)  Such other relief deemed fair and just

**JURY TRIAL DEMAND**

Plaintiff demands trial by jury as to all issues so triable.

Respectfully submitted,

*/s/Charles M. Baron*
CHARLES M. BARON, ESQ.
Fla. Bar No. 509825
Law Offices of Charles M. Baron, P.A.
*Attorney for Plaintiff*
2514 Hollywood Blvd., Suite 408
Hollywood, FL 33020
Tel. (954)919-5669 or (305)933-9292
Fax (305)933-9992
Email: cmb@baronjustice.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on September 9, 2019 to Eric A. Rodriguez, Esq., Assistant County Attorney, Miami-Dade County Attorney's Office, Attorney for Defendant, 111 N.W. 1st Street, Suite 2810, Miami, Florida 33128, Email: ear2@miamidade.gov.

*/s/Charles M. Baron*
Charles M. Baron, Esq.

# EXHIBIT A

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☒ EEOC | Agency(ies) Charge No(s):<br>510-2013-03337 |
|---|---|---|

**Florida Commission On Human Relations** and EEOC
*State or local Agency, if any*

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mrs. Ida S. Brewton | (561) 429-5772 | 01-09-1974 |

Street Address: 2231 Balsan Way, Wellington, FL 33414

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| MIAMI DADE CORRECTIONS AND REHABILITATION | 500 or More | (786) 263-6000 |

Street Address: 2525 NW 62nd Street, Miami, FL 33147

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

Street Address:

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☐ RETALIATION ☐ AGE ☒ DISABILITY ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 04-11-2013  Latest: 05-22-2013

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s))*:

I. I am a qualified individual with a disability. I have been employed with the Company since January 2, 1995, as a Corrections Officer with the rank of Sergeant. In August 2012, I was diagnosed with my disability. In November 2012, I requested a reasonable accommodation and it was approved. Specifically, I requested that I be restricted from rotating to the Pre-Trial Detention Center during times of personnel shortage due to the mold and mildew in the building which exacerbates my condition. I was placed on a Restricted Duty. I was still able to perform the essential functions of my job. On or about April 11, 2013, I was told I was returned to full duty status, which took my accommodation away. I am now being told that I have to rotate to the Pre-Trial Detention Center during shortages and if I am unable to, I have to take personal leave.

II. I have not been given a reason as to why, after having my reasonable accommodation granted, it has been taken away and now I am required to use my personal leave.

III. I believe I have been discriminated against due to my disability in violation of the Americans with Disabilities Act of 1990, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| May 22, 2013 *(signature)* Ida Brewton<br>Date — Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

# EXHIBIT B

U.S. Department of Justice

Civil Rights Division

Disability Rights Section - NYA
950 Pennsylvania Ave, NW
Washington, DC 20530

JUN 2 5 2018

DJ# 205-18-0

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Ms. Ida Brewton
2231 Balsan Way
Wellington, FL 33414

    Re:    EEOC Charge Against:    Miami Dade County Corrections
           EEOC No.:                  510-2013-03337
           DJ#:                          205-18-0

Dear Ms. Brewton:

## NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

    It has been determined that the Department of Justice (the Department) will not file suit on the above-referenced charge of discrimination that was referred to us by the Equal Employment Opportunity Commission (EEOC). This should not be taken to mean that the Department has made a judgment as to whether or not your charge is meritorious.

    You are hereby notified that conciliation on your case was unsuccessful by the EEOC. <u>You are further notified that you have the right to institute a civil action under Title I of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12111, et seq., against the above-named respondent. If you choose to commence a civil action, such suit must be filed in the appropriate court within 90 days of your receipt of this Notice.</u>

    Therefore, if you wish to pursue this matter, you should consult an attorney at your earliest convenience. If you are unable to locate an attorney, you may wish to contact the EEOC or apply to the appropriate court, since that court may appoint an attorney in appropriate circumstances under Section 706(f)(1) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(1), referenced in Section 107(a) of the ADA, 42 U.S.C. § 2117(a).

We are returning the files in this matter to EEOC's District Office. If you or your attorney, have any questions concerning this matter or wish to inspect the investigative file, please address your inquiry to:

Michael J. Farrell
District Director
Equal Employment Opportunity Commission
Miami District Office
Miami Tower, 100 S E 2nd Street
Suite 1500
Miami, FL 33131

Enclosed you will find a list of state resources and a Notice of Rights under the ADA Amendments Act of 2008 (ADAAA).

We are forwarding a copy of this Notice of Right to Sue to the Respondent in this case.

Sincerely,

John M. Gore
Acting Assistant Attorney General

BY: *Amanda Maisels* (signature)

Amanda Maisels
Deputy Chief
Disability Rights Section

Enclosure:
    Florida State Resources
    Notice of Rights under the ADAAA

cc:    Miami Dade County-Corrections
       EEOC –Miami District Office